DAVID R. FARMER, Judge, and HOLLY KIRBY LILLARD, Judge, CONCUR.

STATE of Tennessee, Appellee,

v.

Jennifer NUNLEY, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

July 9, 1999.

Application for Permission to Appeal Denied by Supreme Court Feb. 7, 2000.

**284**

Robert S. Peters, Swafford, Peters & Priest, Winchester, TN, for the Appellant.

Paul G. Summers, Attorney General & Reporter, Georgia Blythe Felner, Assistant Attorney General, Nashville, TN, C. Michael Layne, District Attorney General, Kenneth Shelton, Jr., Assistant District Attorney, Manchester, TN, for the Appellee.

## OPINION

JAMES CURWOOD WITT, Jr., Judge.

The defendant, Jennifer Nunley, appeals from her sentence imposed for facilitation of possession of cocaine more than .5 grams,[1] a Class C felony, in the Coffee County Circuit Court. The trial court imposed a sentence of three years to be served in the Community Corrections program after 60 days of confinement in the county jail. In this direct appeal, the defendant contends that the trial court should have placed her immediately into the Community Corrections program without a period of confinement. After a review of the record, the briefs of the parties, and the applicable law, we affirm the sentence.

The defendant was living with the father of her eleven-month old child, Mr. Braston, when officers of the Tullahoma City Police Department came to arrest him. As the officers entered the residence, they found 8.8 grams of crack cocaine in plain view. Although the state did not charge the defendant with the sale of cocaine, the state's attorney believed the defendant knew the crack cocaine was in her residence. Therefore, the state allowed the defendant to plead guilty to facilitation of possession of cocaine more than .5 grams.

At the time of sentencing, the 24-year old defendant was employed as a quality inspector with Deutch Industrial Products Division in Tullahoma. She provided the sole support of her one child. She graduated from high school and had no prior criminal record.

The defendant challenges the imposition of a period of confinement. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d) (1997). This presumption is "conditioned upon the affirmative showing

---

1. Tenn.Code Ann. §§ 39–11–403, 39–17– 417(a)(4), (c)(1) (1997).

in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). "The burden of showing that the sentence is improper is upon the appellant." *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo. Id.* If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn.Crim.App.1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn.Code Ann. § 40–35–210(a), (b) (1997); Tenn.Code Ann. § 40–35–103(5) (1997); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn.Crim.App. 1993).

■ The record of the case at bar reflects that the trial court relied upon an improper factor, a "sorry social history," for the imposition of a short period of confinement. Accordingly, its determination is not entitled to the presumption of correctness. We will review the sentence under a purely *de novo* standard.

■ To be eligible for the Community Corrections program, an offender must meet the following criteria:

(1) Persons who, without this option, would be incarcerated in a correctional institution;

(2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person . . .

(3) Persons who are convicted of nonviolent felony offenses;

(4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(6) Persons who do not demonstrate a pattern of committing violent offenses; and

Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn.Code Ann. § 40–36–106(a)(1)–(6) (1997). A defendant "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to contrary." Tenn.Code Ann. § 40–35–102(6) (1997). Thus, a defendant who meets the criteria of section 40–35–102(6) is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, offenders who meet the criteria are not automatically entitled to such relief because sentencing issues should be determined by the facts and circumstances presented in each case. *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn.Crim.App.1987).

The defendant, a Range I standard offender, enjoyed the presumption of favorable candidacy for alternative sentencing for the Class C felony involved in this case. *See* Tenn.Code Ann. § 40–35–102(6) (1997). Moreover, she was eligible for sentencing pursuant to the Community Corrections

program. *See* Tenn.Code Ann. § 40–36–106(a)(1)–(6) (1997). In this case, the state recommended that the defendant be placed on the Community Corrections program for four years. However, the court rejected this proposal.

In determining the sentence, the trial court found mitigation factor (1), the defendant's conduct neither caused nor threatened serious bodily injury, applied. *See* Tenn.Code Ann. § 40–35–113(1) (1997). The trial court found no enhancement factors were applicable. Therefore, the court imposed the minimum sentence of three years. The court found confinement to be necessary in order to deter others likely to commit this type of offense. In making this finding, the judge noted that court records showed over 300 indictments for the sale of controlled substances in Coffee County. Additionally, the trial judge found that the defendant refused to cooperate with the police regarding Mr. Braston's whereabouts, that the beeper in her purse at the time of her arrest indicated she was a drug dealer, and that she had a "sorry social history."

We agree with the trial court that mitigation factor (1) applied and no enhancement factors are applicable. The minimum sentence of three years is appropriate under these circumstances. The determination of the manner of service of the three year sentence is where the defendant contends the trial court erred.

■ The defendant's "social history" must be considered in determining whether to grant probation. *Stiller v. State,* 516 S.W.2d 617, 620 (Tenn.1974). However, social history is not specifically mentioned by the code as a factor to be used in overcoming the presumption of suitability for alternative sentences. *See* Tenn.Code Ann. § 40–35–103(1)(A)–(C) (1997). In any event, the only social history contained in the record was information regarding the defendant's relationship with Mr. Braston, who is the father of the defendant's child. Mr. Braston was incarcerated at the time of the sentencing hearing. The defendant had previously been married and divorced before becoming involved with Mr. Braston. The record does not reflect that the defendant's social history supports in any significant way the denial of split confinement involving probation.

■ Also, the trial judge relied on general deterrence in ordering a period of confinement. In order to rely on general deterrence as a justification for a period of confinement, evidence must be presented that shows "confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses." Tenn.Code Ann. § 40–35–103(1)(B) (1997). The evidence presented should "indicat[e] some special need or consideration relative to that jurisdiction which would not be addressed by the normal deterrence inherent in any criminal activity." *State v. Hartley,* 818 S.W.2d 370, 375 (Tenn.Crim. App.1991). The only information in the record regarding the special need for deterrence in Coffee County was the trial judge's statement during the sentencing hearing that "[t]he court records of Coffee County show that in the last two years, there have been over 300 indictments for the sale of controlled substances, therefore showing a need for deterrence."

Pursuant to Tennessee Rule of Evidence 201, judicial notice of adjudicative facts may be taken whether requested or not at any stage of the proceeding. Tenn.R.Evid. 201(a), (c), (f). "A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn.R.Evid. 201(b).

To examine this issue, we must determine whether the need for deterrence, as a basis for imposing incarceration, may be established by judicially noticed facts. If so, we must then determine whether the trial court properly noticed the fact that

300 drug-case indictments had been rendered in the trial court in a two-year period. If so, we must then determine whether the noticed fact supports a finding that a need for deterrence existed.

First, we consider the propriety of using judicial notice in a court's sentencing determination.[2] The provisions of Tennessee Rule of Evidence 201 could be understood to conflict with the provisions of Tennessee Code Annotated section 40–35–401(d). With respect to facts noticed under Rule 201, "no evidence is necessary." Tenn. R.Evid. 201 advisory comm'n comments. The notice is in lieu of evidence. We recognize that, as a practical matter, the effect of Rule 201 is not only to expedite the trial, *see* Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence 38 (3d ed.1995), but also to abbreviate the appellate record.

Requiring that the trial court's basis for judicial notice appear in the record would be, in some cases, tantamount to requiring admission of the evidence that Rule 201 is designed to obviate. On the other hand, Code section 40–35–401(d) mandates that appellate review of criminal sentences shall be "de novo on the record of [the] issues." Tenn.Code Ann. § 40–35–401(d) (1997). The sentencer is obliged to base the sentence "*on evidence* in the record of the trial, the sentencing hearing, the presentence report, and the record of prior felony convictions filed by the [prosecutor]." Tenn.Code Ann. § 40–35–210(g) (1997) (emphasis added). When the sentencer is considering deterrence, in particular, as a basis for imposing incarceration, this court has said that proof supporting the need for general deterrence in that jurisdiction is necessary. *See Antonio S. Moore*, No. 02C01–9701–CR–00035, slip op. at 506 (Tenn.Crim.App., Jackson, Mar. 18, 1998); *State v. Hartley*, 818 S.W.2d 370, 375 (Tenn.Crim.App.1991). In *State v. Smith*, 735 S.W.2d 859, 864 (Tenn.Crim.

App.1987), this court warned that should trial courts be "permitted to assume facts not in the record, base a sentence on extraneous facts, or take judicial notice of facts not available to this court nor included in the record transmitted to this court, it would be impossible for this court to conduct a *de novo* review of the sentence imposed by the trial judge." *Id.* In *State v. Jenkins*, 733 S.W.2d 528, 535 (Tenn. Crim.App.1987), this court criticized a trial court basing a denial of probation on deterrence when the trial court "assume[d] facts not in the record or base[d] a sentence imposed on extraneous facts, [making] it impossible for this court to review" the sentencing issue. *Id.*

■ However, *Smith* and *Jenkins* were decided before the adoption of the Tennessee Rules of Evidence which became effective January 1, 1990. Rule 201(e) mandates procedure for contemporaneously challenging the trial court's proposed judicial notice, by giving a party the right to be heard "as to the propriety of taking judicial notice and the *tenor of the matter to be noticed.*" Tenn.R.Evid. 201(e) (emphasis added). Upon request made either before or after notice is taken, the aggrieved party may challenge the propriety of the notice and controvert the accuracy or applicability of the fact being noticed. *Id.* The implicit effect of Rule 201 is that, if the aggrieved party does not act under subsection (e), the noticed fact is taken as given for purposes of both the trial and appellate proceedings. *See State v. Richard Douglas Lowery*, 1997 WL 260070, No. 03C01–9604–CC–00146, slip op. at 11–13 (Tenn.Crim.App., Knoxville, May 19, 1997) (on appellate review of sentencing determination, record supported findings of defendant's prior criminal conviction based upon the trial court judicially noticing, without contradiction or objection, the defendant's prior conviction which was rendered in the same trial court, even though no document

---

**2.** The following discussion examines the role of judicial notice in a trial judge's sentencing determination. It does not address judicial notice in criminal proceedings where juries are involved in the fact-finding process. *See* Tenn.R.Evid. 201(g).

reflecting the prior conviction appeared in the appellate record); *see also State v. David Rucker*, 1987 WL 18388, No. 248, 249 (Tenn.Crim.App., Knoxville, Oct. 16, 1987) (approving the sentencing court's judicial notice that LSD is "a dangerous drug that can cause serious injury or death to the user," based upon the appellate court's "view that the dangerous potential of [the drug] is of such common knowledge that a trial judge may, on a sentencing hearing, consider [it] in weighing the nature of the crime").

■ Under this view of Rule 201 judicial notice, a judicially noticeable fact that is duly noticed by the trial court without timely objection is a part of the record *as stated by the trial court* and is in lieu of "evidence" that Code section 40–35–210(g) otherwise requires. *See* Neil P. Cohen et al., at 45 ("Failure to request a hearing can bar later appellate review of judicial notice."). Moreover, "[h]istorically, judicially noticed facts have been given the same weight as facts proven through formal proof." *Id.* at 38.

■ Of course, certain admonitions apply. Any court taking judicial notice of "adjudicative facts" must take care that the facts noticed fall within the permitted categories delineated in Rule 201(b): facts (1) "generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn.R.Evid. 201(b). In either case, the fact must "be one not subject to reasonable dispute." *Id.* This limitation means, "[a]lmost by definition, if a party offers anything other than dilatory or pretextual reasons for opposing the taking of judicial notice, the court should view the fact as subject to reasonable dispute and decline to take judicial notice of it." Neil P. Cohen et al., at 44. Furthermore, a court may not consider facts outside the record that are within

the judge's personal knowledge under the guise of taking judicial notice. *Vaughn v. Shelby Williams of Tennessee*, 813 S.W.2d 132 (Tenn.1991); Neil P. Cohen et al at 42.

■ Having concluded that proper judicial notice of facts may serve as a basis for sentencing determinations, we now examine the notice taken in the case at bar. Court records fall within the general rubric of facts readily and accurately determined. Neil P. Cohen et al., at 43; *U.S. v. Montemayor*, 666 F.2d 235, 237 (5th Cir. 1982). In the present case, the nature and number of indictments rendered in the trial court over a two-year space were generally noticeable by that court, and the defendant disputed neither the propriety of taking such notice nor the tenor of the fact noticed. We conclude that the trial judge properly took judicial notice of the rendering of 300 drug-case indictments in the trial court during a two-year period, and the defendant's failure to request a Rule 201(e) hearing now precludes appellate review of the underlying fact. Neil P. Cohen et al., at 45.

■ It does not follow necessarily, however, that the fact properly noticed provides an adequate basis for the trial court's determination that a need for deterrence existed.[3] The trial court did not interpret the meaning of, nor provide any perspective for, the 300 drug-cases, and we are unable to glean from the record pertinent facts, such as whether any of the indictments resulted in convictions, the total number of offenders who were indicted, whether the alleged offenses originated in small clusters of population concentration, or whether the number was excessive compared to other similar localities during the same time period. If relevant, the fact noticed does not *ipso facto* establish that a need for deterrence existed.

3. In the present case, we view the 300 drug-cases as the fact noticed, not the need for deterrence itself. Based on the 300 cases, the court *found* that a need for deterrence existed.

Nevertheless, the record provides another basis for affirming the trial court's imposition of a short period of confinement coupled with Community Corrections. The trial judge found, at least by implication, that the defendant lacked credibility and candor with the court. The defendant testified at the sentencing hearing that she did not know the whereabouts of Mr. Braston when asked by the police and that she was not involved in drug activity. It is apparent from the trial judge's findings that he did not believe the defendant's testimony because he found the defendant refused to cooperate and that she was a drug dealer. Lack of candor and credibility are indications of a defendant's potential for rehabilitation. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn.1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn.Crim.App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn.Crim.App.1995); *State v. Dowdy*, 894 S.W.2d 301, 305–06 (Tenn.Crim.App. 1994). The trial judge is in the best position to assess a defendant's credibility and potential for rehabilitation. A defendant's potential for rehabilitation "should be considered in determining the sentence alternative or length of a term to be imposed." Tenn.Code Ann. § 40–35–103(5) (1997). We conclude that the trial judge correctly considered this factor in ordering a short period of confinement.

In consideration of the foregoing and the record as a whole, we affirm the sentence imposed by the trial court.

PEAY and WELLES, JJ., concur.