IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 21, 2010

## STATE OF TENNESSEE v. FLOYD RODRIQUEZ JOHNSON

**Direct Appeal from the Circuit Court for Montgomery County
Nos. 40601144, 40700186, 40700310     John H. Gasaway, III, Judge**

_____

**No. M2009-01270-CCA-R3-CD - Filed July 22, 2010**

_____

In three separate cases, the Defendant, Floyd Rodriquez Johnson, pled guilty to two counts of possession of more than .5 grams of cocaine with the intent to sell and one count of the sale of more than .5 grams of cocaine. The Defendant agreed to allow the trial court to sentence him and agreed he was a Range II offender. The trial court sentenced the Defendant to an effective sentence of fifteen years in the Tennessee Department of Correction. The Defendant appeals, contending that the trial court erred when it sentenced him to confinement. After a thorough review of the record and applicable authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, delivered the opinion of the Court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

B. Nathan Hunt, Clarksville, Tennessee, for the Appellant, Floyd Rodriquez Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Lacy E. Wilber, Assistant Attorney General; John W. Carney, Jr., District Attorney General; John E. Finklea, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from three separate indictments issued by the Montgomery County grand jury. In case number 40601144, the Defendant was indicted for possession with the intent to sell more than .5 grams of cocaine, possession of marijuana, and contributing to the delinquency of a minor. In case number 40700186, the grand jury indicted the Defendant for

the sale and delivery of more than .5 grams of cocaine. In case number 40700310, the grand jury indicted the Defendant for possession with the intent to sell more than .5 grams of cocaine, possession of marijuana, and possession of drug paraphernalia. On December 13, 2007, the trial court held a guilty plea hearing during which the Defendant's attorney informed the court that, had this case gone to trial, the evidence would have shown:

> [In case number 4060114] the female in the car, the passenger, had cocaine and marijuana under her shirt and the discovery indicates that [the Defendant] told the police that it belonged to him.
>
> [In case number 40700186 the Defendant] is in a video tape. He has seen the video, he has had a chance to review it at the jail, sold [cocaine] to informant whose identity has been made known to us in the video tape. I think the State will contend that he continually repeated his cell phone number during the transaction.
>
> [In case number 40700310] The police were called to 66A Lincoln Homes. . . . [D]uring a subsequent search, they learned [the Defendant] had a room allegedly in the Lincoln Homes apartment and they then obtained a search warrant, wherein over a half of a gram of cocaine was found, in what [the State] alleged to be [the Defendant's] room.

In case number 4060114, the Defendant entered a plea of guilty to possession with intent to sell more than .5 grams of cocaine, a class B felony, and the State dismissed the other charges associated with that case number. In case number 40700186, the Defendant entered a plea of guilty to sale of over .5 grams of cocaine, a class B felony. In case number 40700310, the Defendant entered a plea of guilty to sale of over .5 grams of cocaine, a class B felony. In all three cases, the Defendant agreed he was a Range II offender, with an applicable sentencing range of twelve to twenty years. The trial court accepted the Defendant's guilty pleas and ordered him to enter a rehabilitation program for six months and come back for sentencing.

At the subsequent sentencing hearing,[1] the trial court summarized the Defendant's guilty pleas and noted that sentencing was postponed so that the Defendant could admit himself into a rehabilitation program. The trial court then addressed the record which indicated that the "furlough" was revoked because the Defendant left the rehabilitation

---

[1]The sentencing hearing encompassed charges stemming from a fourth indictment, also a class B felony. The Defendant, however, only timely appealed his sentences for three of the four convictions, all of which were class B felony convictions.

program.  The trial court admitted the presentence report into evidence.

The Defendant testified he had been in jail for over two years and said he had a drug and alcohol problem.  He said he started using alcohol when he was "young" and started using drugs when he was "a little older."  By the time he was eighteen, he began using marijuana and cocaine, spending at least $100 per day to support his habit.  The Defendant said his drug problem led to him ruining his life, and he asked the court for the chance to get his life back.

The Defendant recalled he entered a rehabilitation program on December 13, 2007, where he resided for two months.  He said he learned about self responsibility and how to be a man.  He learned to make the right decisions to get away from using drugs.  He got a job and began providing for his son.  The Defendant said he did not use drugs while attending the rehabilitation program.

The Defendant said he was asked to leave the rehabilitation program unjustifiably.  He said a fight broke out at his place of employment between a man who attended his rehabilitation program and another man.  The Defendant attempted to intervene, and he broke up the fight.  The two men involved in the fight were fired, but the Defendant was not.  When the Defendant returned to his rehabilitation program, they told him that someone had seen the incident and said the Defendant was involved in the fight.  The Defendant said he obtained letters from his supervisor and other employees stating that he only attempted to stop the fight, but he was still asked to leave the program.  The Defendant said he wanted to return to the program, and the program said he could return if he took care of a pending escape charge against him.

The Defendant said that, since he had returned to jail, his mother had suffered some strokes.  He said he was the only person to care for her, and he asked to be released on probation so that he would attend to her needs.  He said he had been offered two jobs, and he would live with his mother.  The Defendant said he wanted to be there for his son.

The Defendant acknowledged that he had previously violated his probation on other cases but said that he had changed, in part, because he was no longer facing the same addiction.

On cross-examination, the Defendant agreed that he left court with a ten year probated sentence on April 6, 2006.  Before that, while facing felony drug charges, the Defendant sold drugs on January 15, 2006, and March 23, 2006.  After he agreed to his probationary sentence on April 6, 2006, he sold drugs on September 29, 2006, and January 2007.  The Defendant agreed he had completed a rehabilitation program in 2001 but said he was a

juvenile at the time.

Based upon this evidence, the trial court found:

When Mr. Johnson left Court on April 6, 2006, he had been sentenced to one ten-year term and two five year terms. They were probated and ordered to be served concurrently.

. . . .

After he was placed on probation, he was later indicted for four Class B Felonies, in four different cases. Two of those had an offense date that predates the date that he was convicted. 40601143 has an offense date of January 15th, 2006, which predates his conviction date of April 6th, 2006. In case number 40601144, it has an offense date of March 23, 2006, which predates the conviction date of April 6th, 2006.

In case number 40700186, it has an offense date of [September] 29, 2006, which means that after he was convicted on April 6th, 2006, five months later, he was selling over half a gram of cocaine. And in 40700310, which has an offense date of January 3, 2007, he was in possession of over a half of a gram of cocaine with the intent to sell or deliver, also a B felony.

So those two cases occurred while he was on probation.

After making proper considerations, the trial court applied mitigating factor (1), that the conduct involved neither caused nor threatened serious bodily injury, and mitigating factor (13), the "catchall" provision, based upon the Defendant's plea of guilty which obviated the need for a trial. *See* T.C.A. 40-35-113. The trial court, in considering enhancement factors, also found that the Defendant committed two of these offenses while he was on probation and that he had an extensive criminal history. *See* T.C.A. 40-35-114 (1) and (13)(c). The trial court sentenced the Defendant to twelve years in case number 40601144, fifteen years in case 40700186, and fifteen years in case number 40700310. The trial court ordered these sentences be served concurrently.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends the trial court erred when it ordered that he serve

his sentence in confinement, or, in the alternative, that the trial court erred when it failed to offer him another opportunity to complete a different rehabilitation program. When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d); *State v. Mencer*, 798 S.W.2d 543, 549 (Tenn. Crim. App. 1990). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, *Sentencing Comm'n Cmts*. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration and proper weight to the factors and principles relevant to sentencing under the 1989 Sentencing Act, Tennessee Code Annotated section 40-35-103 (2006), we may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001).

Due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be *considered* as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* (footnote omitted) (emphasis added). T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6) (emphasis added).

In the case under submission, the Defendant was sentenced for three class B felony convictions, and he agreed that he was a Range II offender for the purposes of sentencing. The trial court sentenced him to fifteen years in prison.

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C) (2006). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

The Defendant asserts that the trial court improperly applied the provision of Tennessee Code Annotated section 40-35-103. He states that, while he has a lengthy criminal history, the majority of this history is due to his drug addiction, and he has not used drugs or alcohol in over two years. Further, he asserts that measures less restrictive than confinement have not frequently or recently been applied unsuccessfully to him. The Defendant concedes that he previously violated his probation, but states that the violation occurred more than two years before this sentencing and, therefore, was not a "recent" violation. The Defendant asserts that his incarcerative sentence is not the least severe measure necessary to achieve the purposes for which the sentence is imposed, because he was not expelled from the rehabilitation program for using drugs or alcohol but for intervening in a fight. The Defendant asserts that the trial court did not consider his potential for rehabilitation, in light of his success in the rehabilitation program from which he was, eventually, expelled. The Defendant asserts he should have, at the least, been sentenced to community corrections.

When the trial court ordered the Defendant to serve his sentence in confinement, the trial court found that the Defendant had a long history of criminal conduct and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant. The evidence supports the trial court's findings. We recognize that the Defendant states that his admitted lengthy criminal history is the result of his drug addiction. This, however, does not excuse or make inapplicable this sentencing consideration. Further, the trial court properly considered that measures less restrictive than confinement had recently been applied unsuccessfully to the Defendant. The Defendant's sentencing was delayed so that he could attend a rehabilitation program. The Defendant failed to complete this program, was charged with escape, and incarcerated. Further, the Defendant was on probation at the time that he committed two of the felonies that are the subject of this appeal. As such, we conclude the trial court made the proper sentencing considerations and did not abuse its discretion when it ordered the Defendant to serve his sentence in confinement.

The Defendant next contends that the trial court erred by sentencing him to confinement without providing him another opportunity to complete rehabilitation. The

evidence reflects that the Defendant had previously attended two drug rehabilitation programs.  The first, which he attended as a juvenile, he completed, but the second expelled him after he was involved in a physical altercation.  While the Defendant asserts that he was not involved in the altercation, and was only trying to break up the fight, this is not sufficient evidence for us to reverse the trial court's ordering the Defendant to an incarcerative sentence.  While a trial court may consider drug rehabilitation programs as an alternative, it is not required to do so.   Further, considering the Defendant's prior unsuccessful rehabilitative attempts, the evidence amply supports the trial court's decision.

### III.  Conclusion

After a thorough review of the record and the applicable authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE